UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARDELL WILLIAMS,

                    Plaintiff,

v.                                                 **DECISION AND ORDER**
                                                       07-CV-0492

ALTERRA ASSISTED LIVING
HOME HEALTH CORP./
BROOKDALE,

                    Defendant.

## I. INTRODUCTION

Plaintiff Cardell Williams (hereinafter, "Plaintiff"), acting *pro se*, commenced this employment discrimination action by filing a Complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Therein, he alleges that Defendant Alterra Assisted Living Home Health Corp./ Brookdale discriminated against him based on his race and color, and retaliated against him for filing a complaint with the New York State Division of Human Rights. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter, "Title VII") and the New York State Human Rights Law, N.Y. EXEC. L. §§ 296 et seq. (hereinafter, "NYHRL"). Presently before this Court is Defendant's Motion for Summary Judgment.[1] (Docket No. 20.) Plaintiff opposes the motion.[2] For the reasons stated below, Defendant's motion is granted.

---

[1] In support of its Motion for Summary Judgment, Defendant filed a Memorandum of Law; Attorney Affidavit, with exhibits; Rule 56 Statement of Undisputed Material Facts; Attorney Affidavit in Further Support; and Supplemental Reply Affidavit and Memorandum.

[2] In opposition to Defendant's motion, Plaintiff filed a Memorandum of Law and Affidavits in Opposition disputing portions of Defendant's Rule 56 Statement. Plaintiff's counsel is on notice that submissions which do not comply with the local rules may be rejected in the future.

1

## II. BACKGROUND

**A.     Facts**

Alterra Assisted Living Home Health Corp./ Brookdale (hereinafter, "Alterra" or "Defendant") operates assisted living residences for elderly and memory-impaired individuals. (Compl. p. 30.) Plaintiff was hired as a part-time Dietary Aid, on July 25, 2003, at Alterra's Wynwood of Kenmore location, by Dining Service Manager Carolyn Elia (hereinafter, "Elia"). (Def.'s Stmt.[3], ¶ 1.) On the day he was hired, Plaintiff received a document titled, "Alterra Attendance Expectations" which, among other things, requires that an employee who is going to be late for a shift call at least two hours in advance of the scheduled start time. (Pl.'s Dep. 108:4-110:16.)

As a Dietary Aid, Plaintiff was responsible for serving the residents, dishwashing, and cleaning. (Def.'s Stmt. ¶ 2.) It appears Plaintiff performed his job without incident for approximately six months. On January 28, 2004, Plaintiff received a Corrective Action Notice, which states he became argumentative with and made derogatory remarks about a resident. (Def.'s Ex. A.) Elia counseled Plaintiff that "he must change his actions... [or] he will be terminated." (Id.)

On April 24, 2004, Elia completed a performance appraisal for Plaintiff. (Def.'s Ex. B.) She assessed him as meeting expectations with regard to "Alterra Cornerstones," job knowledge, quality, dependability, initiative, and communication. (Id.) However, Elia indicated Plaintiff's customer service skills and quantity of work still needed improvement.

---

[3]Referring to Defendant's Rule 56 Statement of Undisputed Facts, which contains citations to the record evidence in this case. This Court has confirmed and is satisfied that the evidence cited supports the assertions therein. Cf. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir., 2001) (holding that factual allegations contained in a Rule 56.1 Statement that find no support in the record evidence must be disregarded and the record reviewed independently).

(Id.)  She further noted that Plaintiff "needs to learn how to take criticism without taking it personally when it comes to the job" and "does not respond well to orders."  (Id. pp. 4-5.)

Plaintiff received another Corrective Action Notice from Elia on August 21, 2004 for attendance violations.  (Def.'s Ex. C.)  Elia noted that Plaintiff did not show up for his Saturday morning shift, gave no notice, and was starting to show a pattern of not coming in on weekends.  (Id.)  Plaintiff was told his attendance had become an issue and that additional attendance problems could lead to termination.  (Id.)  Elia marked the Notice as a final written warning.  (Id.)

On December 15, 2004, Elia requested that employees provide her their schedule or hours of availability for the upcoming quarter. (Elia Dep. 70:16-18.) Elia's staff consists primarily of students whose schedules change during the course of the school year.  (Id. 50:15-16.)  Therefore, she requires they update their availability in writing on a quarterly basis.  (Id. 47:18-20, 50:14-20.)  Schedules were typically prepared a month in advance and posted two weeks ahead of time.  (Id. 70:6-9.)  Plaintiff did not provide Elia with a verbal or written schedule after December 15th.  (Id. 50:17-20.)  Without his schedule, Elia was forced to schedule Plaintiff only as a "fill-in," covering employees who called off, or who were on disability leave or paid time off.  (Def.'s Stmt., ¶¶ 22, 28.)  On January 1, 2005, Elia documented Plaintiff's failure to provide her with his school schedule.  (Ex. D.)

Plaintiff was again late for work on January 3 and 6, 2005.  (Def.'s Ex. E.)  When Elia explained that being late caused residents to be served late, Plaintiff responded, "I don't care."  (Def.'s Ex. F.)  He was late again on January 14, 2005.  (Def.'s Ex. E.)

On or about January 19, 2005, Plaintiff found a diamond ring in the Alterra Parking lot that belonged to one of the residents.  (Pl. Dep. 15:21-22; Def.'s Stmt., ¶ 23.)  The

3

residents nominated him for "Employee of the Month," which he received. (Pl. Dep. 16:7.)

On or about January 21, 2005, Plaintiff complained to Elia about his lack of hours on the upcoming two week schedule. (Id. 18:16.) In addition, Plaintiff's mother called Alterra's Employee Hotline to discuss the reduction in her son's hours. (Def.'s Stmt., ¶ 30; Def.'s Ex. G.) She spoke with Janeen Podbutzky (hereinafter, "Podbutzky"), Human Resources Assistant, on February 1, 2005. (Def.'s Stmt., ¶ 31; Def.'s Ex. G.) Podbutzky agreed to look into the matter, and on February 7, 2005, she informed Plaintiff's mother that her son's hours were reduced because he never gave Elia his availability as requested, and two staff members had returned from vacation. (Id.) In addition, as a "limited part-time" employee, Plaintiff was not guaranteed a certain number of hours. (Def.'s Stmt., ¶ 35.)

On February 24, 2005 Plaintiff attended a mandatory staff meeting where he received a copy of "Rules for Personal Conduct" containing the policy and procedure for attendance, and where the "Zero Tolerance Policy for Attendance" was discussed. (Def.'s Ex. I; See also, Def.'s Ex. H.)

Shortly thereafter, on March 4, 2005, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights (hereinafter, the "DHR"), in which he alleged that because Elia was unhappy a black employee had received the "Employee of the Month" award, she proceeded to cut his hours and criticized him for coming in late. (DHR Verified Complaint, March 4, 2005, ¶¶ 4, 8.)

After Plaintiff was again late for his shift on March 12, 2005, Elia prepared a third Corrective Action Notice, which she again recorded as a final written Notice. (Def.'s Ex. I.)

On April 29, 2005, Plaintiff was counseled by Elia and the new Residence Director, Jeannine Monteleone (hereinafter, "Monteleone") for showing up twenty-five minutes late for work on April 23rd. (Def.'s Stmt., ¶ 43; Def.'s Ex. E.) Monteleone warned that if Plaintiff was late again, he may be terminated. (Def.'s Ex. E; Pl. Dep. 47:8-10.) Plaintiff stated that he understood. (Def.'s Stmt., ¶ 45.)

Despite these multiple final warnings, Plaintiff was late again on May 12, 2005. (Pl. Dep. 185: 17-19.) This was his ninth instance of tardiness in 2005. (Def.'s Ex. J.) Plaintiff was getting his hair done for prom and it was taking longer than expected, so he decided to call off work. (Pl. Dep. 175:17-22.) However, after a cook/dishwasher at Alterra informed Plaintiff that they were short-staffed and needed somebody, he decided to go in. (Id. 176:2.) Although he knew he was going to be late, he did not inform a supervisor. (Id. 178:13.) When Plaintiff arrived late, Monteleone told him to get his stuff and go home and she would call to set up a meeting to discuss his tardiness. (Monteleone Dep. 24:10, 12-14.) When Monteleone called Plaintiff, his mother would not let her speak to him, but did allow her to set up a meeting with him for May 14, 2005. (Id. 22:14-16; Def.'s Stmt., ¶ 58.)

At the meeting, Monteleone told Plaintiff she was terminating him and explained how she had come to that decision. (Id. 19-20.) The termination was based on a review of Plaintiff's "entire course of conduct," Alterra's policy, discussions with human resources, the opportunities Plaintiff was given to increase the quality of his performance, and the counseling he received. (Id. 32:13-21.) At the close of the meeting, Plaintiff received his Notice for discharge from Monteleone. (Id; Def.'s Ex. J.)

On May 17, 2005, Plaintiff filed an Amended Charge alleging he was terminated in retaliation for filing a discrimination complaint with the DHR. (DHR Verified Complaint, May

5

17, 2005, ¶¶ 19.) At Plaintiff's request, the DHR complaint was administratively dismissed. (Dismissal for Administrative Convenience, June 5, 2007.)

**B.     Procedural History**

The EEOC issued a Notice of Dismissal and Right to Sue on May 18, 2007. (See Complaint, p. 19.) Plaintiff, *pro se,* filed his Complaint with the Clerk of the Court on July 30, 2007. (Docket No. 1.) Alterra filed an Answer thereto on September 25, 2007. (Docket No. 5.) On November 21, 2007, Barbara M. Sims entered a Notice of Appearance on Plaintiff's behalf. (Docket No. 10.) Alterra filed the instant Motion for Summary Judgment on March 20, 2009. (Docket No. 20.)

### III.  DISCUSSION AND ANALYSIS

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the

motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). Summary judgment is proper "only when reasonable minds could not differ as to the import of evidence." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

**B.    Plaintiff's Discrimination Claims under Title VII**

    **1.    Title VII Framework**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or

7

national origin." 42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). Discrimination claims brought under Title VII are analyzed under the burden-shifting analysis first set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination. If the plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)).

Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional. In this regard, the plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of

intentional discrimination." Id. (quoting St. Mary's, 509 U.S. at 519).

### 2. Plaintiff's Disparate Treatment Claims

A Title VII disparate treatment claim arises when a member of a protected class is treated less favorably than others under circumstances from which an unlawful motive could be inferred. See Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 309 (2d Cir. 1981); see also Ott v. Perk Dev. Corp., 846 F.Supp. 266, 275 (W.D.N.Y. 1994).

#### a. Plaintiff's *Prima Facie* Case

"The burden of establishing a *prima facie* case of disparate treatment is not onerous." Burdine, 450 U.S. at 253; see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000) (characterizing burden as "minimal"). To state a *prima facie* case, a plaintiff must show that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. Weinstock, 224 F.3d at 42 (citing McDonnell Douglas, 411 U.S. at 802). The first three elements are not in dispute in the case at hand. Defendant submits Plaintiff was a member of a protected class, was qualified for the position he held, and was subsequently discharged. However, Defendant contends that Plaintiff cannot show his termination occurred under circumstances giving rise to an inference of discrimination.

First, Defendant argues Plaintiff failed to identify similarly situated employees who were treated more favorably after engaging in the same conduct. One way for a Plaintiff to establish a *prima facie* case is by showing that he was treated "less favorably than other

9

similarly situated employees outside [the] protected group." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). Plaintiff has identified two Caucasian employees, Jessica (last name unknown) and Mike Hassett, who he claims were treated more favorably than he. (Def.'s Stmt., ¶ 67.) Jessica and Mike both reported to Elia, were required to abide by "Alterra's Attendance Expectations," and were repeatedly late or did not show up for work. (Pl.'s Dep. 131-140.) See Francis v. Runyon, 928 F.Supp. 195, 203 (E.D.N.Y. 1996) (finding that "in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance, evaluation and discipline, and must have engaged in conduct similar to the plaintiff's . . .").

Defendant contends Plaintiff has failed to show that Jessica and Mike were similarly situated employees because he has offered no evidence that they performed the same job functions as Plaintiff and had a similarly poor attendance record. However, case law dictates that "such an employee 'must be similarly situated in all *material* respects,' not *all* respects." McGuinness v. Lincoln Hall, 263 F.3d 49, 54-55 (2nd Cir. 2001) (quoting Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2nd Cir. 1997). Jessica and Mike's situations were similar to Plaintiff's in that they violated Alterra's Attendance Policy by not calling or showing up for their scheduled shifts on multiple occasions. (Pl.'s Dep. 28:5-9.)

However, to satisfy a *prima facie* case, Plaintiff must show that these similarly situated employees were treated more favorably. Plaintiff acknowledges that Mike was terminated and that Jessica "self-terminated." (Id. 28:7; 136:17.) Thus, Plaintiff has failed to put forth evidence that these two similarly situated employees were treated more

10

favorably than he.  Shumway, 118 F.3d at 64 (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Defendant also contends that because Elia hired and fired Plaintiff, there is a strong presumption against discrimination.  This "same actor inference" suggests that invidious discrimination is unlikely where the hirer and firer are the same individual.  Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2nd Cir. 1997).  However, this argument is rejected because, while Elia was the one who hired Plaintiff, Monteleone was the one who fired him.  (Def.'s Stmt. ¶ 78.)

Nevertheless, because Plaintiff has failed to show his termination occurred under circumstances giving rise to an inference of discrimination, he failed to establish a *prima facie* case.

### b. Defendant's Legitimate, Non-Discriminatory Reason

Even assuming Plaintiff had succeeded in demonstrating a *prima facie* case, Defendant has offered a legitimate, non-discriminatory reason for terminating Plaintiff. The burden on Defendant to state a legitimate, non-discriminatory reason is one of production, not persuasion.  See Reeves, 530 U.S. at 142.  "This explanation must be 'clear and specific.'" Gallo, 22 F.3d at 1226 (quoting Meiri, 759 F.2d at 997).

"It is well-settled that employee misconduct is a legitimate, non-discriminatory reason for the termination of employment." Cordell v. Verizon Wireless, 550 F.Supp.2d 400, 403 (W.D.N.Y. 2008).  Defendant terminated Plaintiff because, despite repeated counseling and warnings by Elia, he continued to violate Alterra's attendance policy.  See Shumway, 118 F.3d at 65 (where plaintiff was aware of employer's policy, had been

11

warned about it, and flagrantly violated it, employer had a legitimate, non-discriminatory reason for firing her.). Consequently, even assuming Plaintiff had demonstrated a *prima facie* case, the presumption of discrimination "drops out of the picture." Hicks, 509 U.S. at 511.

### c. Pretext for Intentional Discrimination

The burden would then return to Plaintiff to demonstrate that Defendant's non-discriminatory reason is mere pretext for actual unlawful discrimination. Plaintiff's counsel contends the McDonnell Douglas burden shifting analysis does not apply to summary judgment motions, and thus does not offer any evidence that Defendant's legitimate, non-discriminatory reason was a pretext for unlawful discrimination. Because Plaintiff has both failed to state a *prima facie* case of discrimination and to demonstrate pretext, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

## C. Plaintiff's Retaliation Claims under Title VII

Title VII makes it unlawful for employers to retaliate against employees who participate in protected activities, such as challenging discriminatory practices or actions. 42 U.S.C. § 2000e-3(a); Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). When evaluating a Title VII retaliation claim, courts employ the McDonnell-Douglas burden-shifting analysis.

Under that framework, the plaintiff must first establish a *prima facie* case by showing that (1) he participated in a protected activity, (2) his participation was known to the defendant, (3) he suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action. Richardson, 180

F.3d at 443; Jones v. Smithkline Beecham Corp., 309 F.Supp.2d 33, 356 (N.D.N.Y. 2004). Defendant does not dispute that Plaintiff participated in a protected activity when he filed a complaint with the DHR on March 4, 2005. However, Monteleone attests she was unaware of any complaint made to the DHR when she decided to terminate Plaintiff. (Monteleone Dep. 30:14-18.) On this basis, Defendant argues Plaintiff cannot show a causal connection between the protected activity and the adverse employment action.

Plaintiff's counsel has not offered any response with regard to retaliation and thus apparently concedes dismissal is appropriate. Accordingly, Defendant's motion on the retaliation claim is granted.

**D.     State Law Claims**

Plaintiff's claims under the NYHRL and Title VII are identical. "New York courts require the same standard of proof for claims brought under the [NY]HRL as those brought under Title VII." Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n.4 (2d Cir. 1995). Accordingly, this court will not address the NYHRL claims separately. Based on the analysis above granting Defendant's Motion for Summary Judgment under Title VII, Defendant's motion is also granted under the NYHRL.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 20) is granted consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated: December 9, 2010
       Buffalo, New York

                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                              Chief Judge
                                       United States District Court